IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WARREN FINNEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 323-025 |
| | ) | |
| MS. HARVEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and *in forma pauperis* ("IFP"). Defendant Harvey filed a pre-answer motion to dismiss, (doc. no. 45), which Plaintiff opposes, (doc. no. 51). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 45), and this case be **DISMISSED** without prejudice and **CLOSED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff originally filed this case naming three defendants and because he is proceeding IFP, the Court screened the complaint. (Doc. nos. 1, 12-15.) On May 22, 2023, United States District Judge Dudley H. Bowen, Jr., dismissed two of the three defendants and Plaintiff's official capacity claims for monetary damages against all defendants. (Doc. no. 17.) The Court allowed Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Harvey to proceed. (Id.)

On October 17, 2023, Plaintiff requested leave to file an amended complaint, which the Court granted, and on October 31, 2023, Plaintiff filed his amended complaint naming two defendants. (Doc. nos. 39-41.) The Court screened the amended complaint, and on January 3, 2024, Judge Bowen dismissed one defendant and Plaintiff's official capacity claims for monetary damages against all defendants. (Doc. nos. 42-44, 59.) The Court again allowed Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Harvey to proceed. (Id.) Defendant Harvey now moves to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his amended complaint. (See doc. no. 45.)

Plaintiff's amended complaint alleges that on August 25, 2022, Plaintiff was stabbed in his right arm and hit in the face multiple times with a lock by inmate David Portillo. (Doc. no. 41, pp. 1-2.) Plaintiff reported the injuries to Defendant Harvey, who observed Portillo holding a shank and the lock, and she stated, "I do not have time for this." (Id.) Defendant Harvey walked away and left Plaintiff in the cell with Portillo as he continued to torture Plaintiff for the next several hours. (Id.) No other officers were assigned to the night shift due to understaffing and no medical personnel were working in the medical department at the time. (Id.) Medical personnel assigned to segregation arrive at 8:00 a.m. and leave at 4:00 p.m., so there are no medical personnel on standby during the night. (Id.)

The next morning, First Shift Officer Underwood came around with Nurse Epps for a pill-call around 8:30 a.m. and Plaintiff yelled for her to come help. (Id. at 6.) Officer Underwood took the shank and lock from Portillo, handcuffed them both, and removed them from the cell by herself. (Id.) Unit Manager Karen Thomas never came to the cell. (Id.) Thomas later, at some unidentified point, wrote a false report stating she saw Plaintiff hit

2

Portillo to "cover up the incident because no medical is provided on night shift." (Id.) Plaintiff requests compensatory, nominal, and punitive damages. (Id. at 5.)

In support of her motion to dismiss, Defendant Harvey produced the sworn declaration of Anntionette Johnson, the Chief Counselor and Grievance Coordinator ("Chief Counselor") at TSP. (See doc. no. 45-2 ("Johnson Decl.")) The Chief Counselor's responsibilities include ensuring compliance with the Georgia Department of Corrections ("GDOC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶¶ 2-3.) The Chief Counselor identified only one grievance that Plaintiff filed at TSP. (Id. ¶¶ 12-13; attach. 5.)

Plaintiff filed Grievance Number 342067 on August 10, 2022, alleging various acts of inmate violence, requesting protective custody, and also noting he previously wrote to Wardens Stewart, Keith, Wilcox, and White. (Doc. no. 45-5.) The grievance was denied because it contained more than one issue and Plaintiff acknowledged receipt of the denial on November 15, 2022. (Id. at 3.) Notably, nothing in this grievance contains any allegations from the instant suit against Defendant Harvey. (Johnson Decl. ¶¶ 12-14; attach. 5.) Plaintiff did not file an appeal. (Id.)

In opposition to Defendant's motion, Plaintiff asserts he filed a grievance on August 26, 2022, but Chief Counselor Johnson walked away with the grievance, did not give him a receipt, and did not process it. (Doc. no. 51, p. 1.) Plaintiff never received a response to this grievance. (Id. at 3.)

## II.    DISCUSSION

### A.    Legal Framework

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process

*before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case."  McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first two situations.  To the extent Plaintiff argues prison officials refused to process his alleged grievance, the Court makes factual findings with respect to that allegation below.

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

**B.    The Administrative Grievance Procedure**

According to the Chief Counselor, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Johnson Decl. ¶ 3; attach 3.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet. Id. § IV(C)(1)(c-d). The grievance is forwarded to the grievance coordinator, who must screen the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id.

The SOP requires the Warden give a response to the counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). Once the offender receives the Warden's response, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id.

§ IV(C)(2). The inmate has seven calendar days from the date he receives the response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § IV(C)(2)(e).

### C. Plaintiff's Failure to Exhaust

In his amended complaint signed on October 27, 2023, Plaintiff acknowledges there is a grievance procedure at TSP and states he filed a grievance concerning the events in the instant suit. (Doc. no. 41, pp. 8-9.) Plaintiff, however, notes he did not receive the results of his grievance, nor did he appeal it because he gave the grievance to Chief Counselor Johnson who walked away with it and never gave him a receipt. (Id.) Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant has the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307-08 (11th Cir. 2022). As explained in detail below, the Court concludes Defendant has carried her burden to show Plaintiff did not exhaust his administrative remedies.

Defendant Harvey has shown through the Johnson Declaration that Plaintiff filed only one grievance unrelated to this case and it was filed approximately fourteen months prior to the filing of his amended complaint. (Johnson Decl. ¶¶ 12-14; attachs. 4, 5.) Defendant Harvey disputes Plaintiff's assertion that he gave Chief Counselor Johnson a grievance on August 26, 2022, concerning the August 25, 2022 incident described in his amended complaint. (See generally doc. nos. 41, 45.) Chief Counselor Johnson declares, under

7

penalty of perjury, that Plaintiff did not submit a grievance to her concerning the August 25th incident nor could she locate any other grievance submitted by Plaintiff at any other time. (Johnson Decl. ¶¶ 12-14; attachs. 4, 5.)

When faced with the Johnson Declaration signed under penalty of perjury, Plaintiff's unsworn and unattested response offers no explanation as to how he managed to file a grievance regarding an unrelated issue on August 10th but his August 26th grievance was allegedly not processed. (See doc. no. 41.) Plaintiff does not show or even attempt to claim that TSP prison officials refused to provide him a grievance form. (See doc. nos. 41, 53.) There is no evidence Plaintiff requested a grievance form or additional assistance in obtaining one. (Id.) Moreover and for argument's sake, if Plaintiff was aware his purported grievance "was not processed" by the Chief Counselor, Plaintiff had ample time to submit a new form to another counselor or on a kiosk but did not do so. (Id.)

The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules. Johnson, 418 F.3d at 1159. The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").

Therefore, based on the above, the Court finds Defendant Harvey has met her burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit.  Because Plaintiff did not exhaust his administrative remedies with respect to his claims forming the basis of this lawsuit prior to initiating this case, the motion to dismiss should be granted.  Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 45), and this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of February, 2024, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA